The opinion of the Court was delivered by
Colcock, J.
It was contended, that the defendant could not be discharged according to the provisions of the Act of 1759, P. L. 247, Brev. Dig. 148,[1] entitled “ An Act for the more effectual relief of insolvent debtors,” &c., because, by the 8th sec. of the 1st Art. of the Constitution of the United States, it is declared “ that Congress shall have the power to establish uniform laws on the subject of bankruptcies throughout the United States;” and the delegation of this power operates as a repeal of all State laws on that subject: that our Act is to be considered as a *291 bankrupt law. The question to be decided is.one of the first importance as it involves a construction of the Constitution of the United States; and its difficulty will be readily acknowledged when it is ascertained that there is a difference of opinion on the subject among the Judges of the United States Courts. Although, it must be admitted that there is a great similarity between our Act and a bankrupt law, yet I conceive, that there are some very obvious and important distinctions. Bankrupt laws usually embraced the mercantile part of the community, and their associates. The provisions of our Act extend to all classes of citizens. A bankrupt is discharged from all subsisting debts: the insolvent debtor from such only as have been sued for. Certain specified Acts, at once, make a man a bankrupt, and his property is vested, by operation of law, in assignees, for the benefit of his creditors : whereas the insolvent debtor is himself the actor that applies for the benefit of this Act; and, if he does not choose to do so, may, in spite of his creditors, retain his property, by remaining in gaol. Whatever view may be taken of the power vested in the general government upon the subject of bankrupts, then, it will seem, that it is not a violation *of it, that the individual States should pass Acts for the relief of insolvent debtors. It is conceived, that the conduct of all the States, and of Congress itself, in the first and only Act passed on this subject, ought to be considered as a contemporaneous exposition of the Constitution. As far as I have been able to obtain information, I find that there is an Act for the relief of insolvent debtors in every State; and the Act of bankruptcy passed by Congress, contained a clause declaring that such Acts were not to be considered as repealed or annulled by that Act, unless where they conflict. Nay, more, Congress has such a law for the Territory of Columbia, not passed under the power given by the 8th sec. of the Constitution, but under the general power given to legislate for that section of the country. Even in England, such laws are passed, notwithstanding their long established system of bankruptcy. (3 vol. Tomlin’s ed. of Jae. Law Die. p. 459.) From these circumstances, I think it fair to say, that the distinction laid down between an insolvent and bankrupt law, is one which has been recognized both by politicians and lawyers ; and that our Act, being an insolvent debtors’s law, and not a bankrupt law, is not within the ;power delegated to the general government; and, of course, not unconstitutional.
But as sueh laws have been considered by gentlemen of distinguished talents, both on the bench and at the bar, as bankrupt laws, it may be. necessary to determine, whether, if our Act be so considered, it follows, that it is unconstitutional: and I am of opinion, that if it be considered as a bankrupt law, it still is not unconstitutional.
1. Because the power given to the general government is not exclusive ; and.
2. Because it can only be considered exclusive, when Congress do exercise it.
In determining this part of the case, it is believed that better authority cannot be had than those numbers written by Publius, commonly called The Federalist, which have always been atributed to gentlemen of *the first talents, in our country, and who were members of that convention which framed the Constitution. It is said, that there *292 are only three cases in which the alienation of State sovereignty is to be considered as exclusive.
1. Where it is so in express terms.
2. Where the States are prohibited from exercising the power granted to the general government; and,
3. Where the exercise of a like power, by the States, to that which is granted to the general government, would be absolutely and totally contradictory and repugnant.
It is clear that the power given to the general government, on this subject, is not comprehended in either of the two first cases; but, it is said, it is embraced in the last. Suppose the individual States should so legislate on this subject as not to interefere with the only uniform system which might be established by the general government, could it be said that the exercise of a similaar power would, under such circumstances, be absolutely and totally contradictory and repugnant ? I presume not. Suppose a bankrupt law to be confined (as it is conceived by many it ought to be) to traders, and their associates, and the State should pass a law of the same kind, or even in the same words, and ■ extend its operation to all classes of citizens, would there be any contradiction or repugnancy in these laws, so as to prevent them from being both carried into operation at the same time ? Surely none. Then the power given is not wholly exclusive, but a similar power may be exercised by the individual States. This construction is supported by the words of the Constitution, “ shall have power to establish uniform laws,” &e. Now in this grant, it is certainly submitted to Congress, to decide whether a uniformity of law on the subject is expedient, if practicable ; and I think we are at liberty to say they have determined that it is not. I suppose the Convention to have held this language: “ Laws for the relief of insolvent debtors are necessary to the well being of a government, and we conceive there should be some uniformity on the subject throughout the bTnited States; and *we give you the power to establish such uniformity, if it shall appear expedient; if not, the States may exercise the power as they now do.” This would imply a condition, and so far is opposed to the idea of exclusion, but admits, that when the power is exercised by the general government, the States shall not interfere. Can it be believed, that it was intended to place the people so absolutely under the control of the general government, as to enable it to say to them, there shall be no law on this subject ? Is not the grant of the power to Congress to legislate on the subject, an expression on the part of the people, of their opinion as to the necessity of such laws ? If so, the condition not being fulfilled, the power is not divested from the States, but remains as it did before the passing of the Constitution. I consider the federal government as the great political agent of the people, for certain purposes ; and when an agent fails to act on a subject within his power of attorney, it is clear that the principal may do so. And this analogy is supported by the nature and construction of federal government. They do not necessarily possess all the essential rights of sovereignty, but only such a portion of them as is expressly delegated, and these are always defined with great accuracy. This view of the subject would preserve the harmony of our government; whereas, the construction contended for by the plaintiff’s counsel would lead to the most *293 deplorable consequencs. Our gaols would be filled with unfortunate debtors, for whom there would be no relief. The guilty and the innocent would be alike subjected to their merciless and unrelenting creditors.
The opinions of the Judges, who have determined cases in which this question has been discussed, may be said to be unanimous.
Mr. Justice Livingston, in the ease of Adams r. Story (6 Hall’s Am Law. Journ.,) is of opinion that the power is not exclusively given to the general government.
Chief Justice Tilgham, in the case of the Farmers’ and Mechanics' Bank v. Wm. W. Smith, (6 Hall’s Am. Law Journ. 547,) although he considers the Act of ^Pennsylvania a bankrupt law, declares, that it is not in violation of the power delegated to the general government; and says, that his brother Mr. Justice Duncan, concurred with the Court.
Mr. Justice Washington, in the case of Golden v. Prince, (5 Hall’s Law Journ. 502.) declares, as his opinion, that the power is exclusive as to bankrupt laws, but says he gives no opinion as to insolvent laws.
Mr. Justice Johnson, in the case of Hannay v. Jacobs, thinks there is no legal distinction between bankrupt and insolvent laws ; but does not think the power is given exclusively to Congress.
Another objection to this law is, that it is unconstitutional, as it “impairs the obligation of contracts,” contrary to the 1st Art. 10th Sec. of the Constitution. This ground was rather touched than relied on by the plaintiff’s counsel; and I, therefore, shall not go at large into the consideration of it. In giving a construction to that part of the Constitution, it is necessary to take a view of the state of things which existed at the time of its adoption, and of the particular Acts which had been passed by many of the States during the struggle for our independence. From the difficulties which had arisen during the war, it was found to be impossible for debtors to satisfy the demands of their creditors. The value of property had diminished. There was little circulating medium in the country. And hence had orignated “pine-barren Acts,” “ instalment laws,” and other acts of similar character, impairing the obligation of contracts, and thereby destroying credit. Many of these laws were then in operation, and to guard against the continuance of them, was the avowed object of this clause in the Constitution. That it was not intended to affect either bankrupt or insolvent laws, is most obvious, when it is recollected that the Constitution itself contained the section which has just been made the subject of consideration, and the provision for the establishment of a uniform system of bankruptcy. The very able exposition of Mr. Justice Livingston, in his opinion in the case of B. and *C, Adams v. Augustus Story, (6 Am. Law Journ. p. 475,) renders any further observation, on this point, unnecessary. Indeed, it did not appear to be much relied on by the plaintiff’s counsel.
I come now to the examination of the third and fourth grounds, as I shall leave the second to be last examined. The third ground is presented in the strongest possible view against the defendant, by assuming the position, that the assignment made to his creditors in England, was made in contemplation of an application for the benefit^of the Insolvent Debtor’s Act of our State. This may have been presumed from all the circumstances of the case, but there was nothing like positive proof on the *294 subject. Let it, however, be admitted, still it is not an evidence of fraud, for there is nothing in the provisions of the Act which prevents a man from giving a preference to one creditor, or to one set of creditors. On the contrary, the provision of the Act of 1788, obviously implies that he may do so, by declaring, that a debtor shall not be discharged if he assign his estate, or any part thereof, to one creditor in preference to another, within three months before his confinement, or any time after. P. L. p. 457, sec. 7. 2 Brev. Dig. 157.[1] And here the assignment was made three months and-days before the defendant’s confinement. It may be difficult to determine why this particular period of time was fixed by the Act; but it is sufficient, that the defendant’s case did not come within it. Nor does the common law prevent a debtor from giving such a preference to favored creditors. I shall not refer to cases to support the general position, but to show, that assignments, in all respects like the present, have been supported. Estwick v. Caillaud, (5 T. R. 420.) Willes and Fontaine v. Ferris, (5 John. Rep. 345.) But it was urged, that the circumstance of the defendant’s taking Mr. Bogue into copartnership, so shortly before his assignment, evidenced a fraudulent intention. Whether the fact could or should induce a suspicion of fraud, was left to the jury; but it was conceived by the Court, that it was not at all calct^ate<lto produce that effect. It *may have been done before the defendant thought of the assignment; and surely a man ought not to be subjected to the imputation of fraud for making new exertions in the way of his business. The defendant returned his copartner as a debtor, and the creditors, of course, are entitled to the amount due by him, which, it is presumed, was the stock in trade.
It was also urged as an evidence of fraud in the defendant, that his co-partner, Mr. Bogue, had received of Mr. H. Smith 3 or $1000, which had been assigned to his creditors in England; but this was received here, and in March. The assignment was made in England, in February, and defendant arrived here 3d May. It cannot be considered as any exercise of ownership by the defendant over the property assigned. It is said, in the last ground, that the facts proven afforded positive evidence from which the jury might infer fraud; and that the Court misdirected the jury in applying to those facts the maxim of law, that fraud is never to be presumed. The facts have all been examined, and were examined on the trial below, and after having arrived at the conclusion, that they did not support the charge, it was then observed, that the jury were not to presume fraud. No inference of fraud could be deduced from the making of the deed ; because the law allowed it, unless done mala fide ; which, if it was, it was incumbent on plaintiff to prove. No fraud can be inferred from the entering into the copartnership with Mr. Bogue : none from the circumstance of his having received the money from Mr. Smith, as has been shown. The verdict of the jury is then correct.
But on the second ground, that the notice of ten days was insufficient, the law requiring three months notice, the Court are of opinion that a new trial must be granted.
For twenty-five years past, the practice of the Court in Charleston has been to admit applicants to the benefit of the Insolvent Debtor’s Act, on *295 a notice of ten days.[1] My individual opinion was, therefore, yielded to this invariable practice. But there is certaintly no warrant for this, in either of the Acts now in force. *The Act of 1759,[2] declares, that upon filing a petition, the Court may, and is hereby required, by order or rule, to cause the petitioner to be brought before them, and as well the creditors, at whose suit such person or persons shall stand , charged, as all other the creditors to whom he, she or they, shall be indebted, be summoned, by public notice, to be given three months at least, in one or other of the gazettes, in such manner as the Court shall direct.[3] In the sixth clause of the Act of 1788, commonly called the “ Prison Bounds Act,” it is declared that the persons wishing to take the benefit of the Act of 1759,[4] (the Insolvent Debtor’s Act,) maybe permitted to do so without an actual confinement of three months ; and it is contended that this dispenses with the notice required by the first Act. But when the other provisions of the Prison Bounds Act are considered, the object of this will be obvious. The first Act required actual confinement, and three months notice to creditors ; the second Act relieves from the actual confinement, and give the unfortunate debtor the benefit of the prison bounds, on certain conditions. It also provides, by the fourth clause, an expeditious mode of discharge, for persons confined either on mesne process or execution, so far as relates to the particular process or demand on which he is confined; and in this clause ten days are spoken of; but the whole being taken together, it is clear that nothing more is intended than a partial relief, as to the particular demand. This is further manifested by the arrangement of the Act of 1788; for, in the 6th clause, it speaks in express terms of those who shall wish to take the benefit of the Insolvent Debtor’s Act, which affords a more extensive remedy or relief, and operates on the petitioner’s creditors generally. Ten days may be a sufficient time to give notice to a single creditor, when three months would often be an insufficient notice to many; and I presume it will not be contended that an insolvent debtor shall be relieved without notice to his creditors ; but should such an argument' be advanced, it could not prevail against the numerous *provisions made in that Act to secure the rights of creditors. Such as providing a mens fora perpetuating the claims of such creditors as are unwilling to receive a dividend; and requiring mortgagees to come in with claims, and allowing further time for such as live without the State. From all which it is manifest, that while, on the one hand, the Legislature were disposed to grant relief to unfortunate debtors, they meant on the other to guard against the frauds of dishonest ones. But the origin of the practice, which has so long prevailed, I think may be found in the County Court Act. When that system was established, there was a provision that insolvent debtors should be discharged on a notice of ten days ; and the provisions are expressly confined to that Act, and to those who shall be taken on execution. The Act, being now repealed, affords no authority for the practice.
The motion is, therefore, granted on this ground.
Mr. Justice Johnson, concurred.
*296 Cheves, J.,
delivered his opinion as follows:
There is one question in this case on which I wish to give my reasons for concurring in the opinion of the Court. It is, whether the Insolvent Debtor’s Act, as it is generally called, under which the defendant was discharged, be constitutional or not ? This general question, to meet the views which have been hitherto taken of the subject, divides itself into three questions.
1.. Whether the power of Congress to establish uniform laws of bankruptcy be exclusive or not ?
2. What is a bankrupt law ?
3. What is an insolvent law ?
The subject properly presents itself in the order in which these questions are stated ; but I think it will be best developed by inverting their 'order. I will, therefore, consider, 1st. What is an insolvent law ? I think it may be defined to be a law which may properly be considered a part, and which does not exceed the limits of the Lex Fori. An insolvent law may discharge a debtor from imprisonment. Imprisonment of Person °f the debtor forms no part of the Lex Contractus. Imprisonment of the person, as a satisfaction of the debt, has not formed a part of the code of all nations, and need not form a part of any code. The Legislature of this, or any other State,[1] may abolish it to-morrow, and in doing so, will, without doubt, not impair the obligation of contracts. But when the laws permit the imprisonment of the person, it is considered as a complete satisfaction of the debt. If the creditor resort to this satisfaction, he is to enjoy it with all its concomitant circumstances. Among these is, I believe, I may say always, and if there be any exception it is not founded in principle, some mode by which it may be limited and terminated. The condition usually imposed upon the debtor is the surrender of his property ; he always is allowed on the other hand, the future exemption of his person from confinement for the particular debt,(b) and there seems to be no reason why he may not be completely discharged from the debt, if it be a part of the law of that tribunal to which the creditor has resorted for his satisfaction. He has taken what the law deems a satisfaction in the imprisonment of his debtor, and he has taken it subject to all the means of defeasance which accompanied it. This course of reasoning may appear to confine the operation of the principle to cases where the creditor has taken his debtor in execution ; but it is not so intended. The case is put, by way of example, and examined, to illustrate the principle, but not to confine it. It is believed the principle may be fairly made to embrace all eases of personal arrest for debt, and so all cases in which an insolvent debtor may require relief. Imprisonment on mesne process to answer to the suit of the creditor is, like imprisonment as a satisfaction of the debt, no part of the Lex Contractus : it is a part of the Lex Fori; and if the creditor resort to it, he must take it with its concomitant conditions ; and if these be the discharge of the person from confinement, and from the debt, upon the surrender of his pro-are conditions within *the just limits of the Lex Fori. In both instances it will be a discharge of the person, and the future estate of the debtor, at least, so far as to require a new promise to revive *297 the obligation. The ease of the Statute of Limitations will illustrate this view of this subject. A foreign creditor, who sues in this State whose suit the Statute of Limitations of this State is pleaded, will, in vain, say, that the debt was contracted in another State or country, by whose laws it is not barred. It would be answered, the statute belongs not to the law of the contract, but is a part of the Lex Fori, and must therefore prevail. So, in that case, though the creditor might recover against his debtor in the country of the contract, or in any other whose laws for the limitation of actions would not embrace his case, yet, if, on the action he had brought in this State, there should be a final judgment' against him, on the plea of the statute, there can, I think, be no doubt, it would be a conclusive bar to his recovery in the country of the contract, and in every other country. Thus the Lex Fori will extinguish the contract, itself, without any pecuniary or other valuable satisfaction, which presents a stronger case than the discharge of an insolvent debtor; because that is always on condition that he surrender his property for the satisfaction of his creditor. But the Insolvent Act of this State goes further. It discharges the debtor, according to the construction it has received, not only from the demand of the person, at whose suit he may have been arrested, but from the demands of all other creditors who may have commenced suits at the time, and from the demands of all creditors who shall he willing to receive a dividend of his estate, and who shall within twelve months after the time of his application for the benefit of the Act, make their demands. And the Act also declares, that no creditor, who was such at the time of application for the benefit of the Act, shall sue the debtor in such manner as to charge his person, in less than twelve months after his discharge. It is not necessary to examine all these provisions, to decide* the case before us ; but as it will serve to illustrate the subject, I will do so.
1. Is the discharge of the debtor from his obligations to creditors, who have not arrested his person, but have sued in the tribunal which administers the benefit of the Insolvent Act, within the principle of the Lex Fori ?
I think, from the examples which we have discussed, we are prepared to say, the remedy, if not the debt, may be extinguished by this law, not only in the particular tribunal, but in every other tribunal, and in every other country. Let us now seek for the reason of the principle. Is it not the voluntary submission of the creditor, who, by his own unbiased act, comes into the tribunal and asks justice, according to its known laws ? It surely is ; and it shows the principle to be founded in the strictest justice. It is his contract. It is, too, a reasonable contract.
It may be admitted, though it is certainly not in the spirit of modern times, and especially of commercial countries, that it is a part of the original contract of a debtor, that his present property, and the future acquisitions of his whole life, are liable to the satisfaction of the debts he contracts. Is it unreasonable, inequitable or unjust, if the laws refuse him a remedy to enforce such a contract to its fullest extent ? Is it not enough to give him all that will generally be beneficial to him, which will be what the debtor possesses when he seeks his remedy ; for an insolvent debtor, unreleased, struggles merely to exhaust his strength without the hope of benefittingjiis creditor ? I confidently answer it is. *298 When a creditor comes into a Court of justice, seeking redress against his debtor, he voluntarily consents to be bound by the reasonable conditions which are imposed by an insolvent law. In this view of the subject, all idea of impairing the obligation of contracts vanishes. But a just construction of this part of the constitution does not forbid the release of the person, and future property of a debtor, who surrenders all his property to his creditors, whether he be sued or not. The distinction between debtors-who are impleaded, *and those who are not, is only material as it regards the power of the State Legislatures, and the effect of State laws. Wheresoever the power may rest, it is within the constitutional extent of Legislative authority in the United States to release an insolvent debtor, from the claims of his creditors, (or if it be deemed more acceptable, to extinguish their remedy,) upon his giving up his property, without impairing the obligation of contracts, in the sense of the Constitution of the United States. That constitution does not, in so many words, restrain Congress from passing laws impairing the obligation of contracts; but no one will doubt, that Congress is as much bound not to pass such laws as if there were an express article to that effect. Yet, Congress has passed a bankrupt law, which discharged the debtor. It is true, the constitution gives power expressly to do so ; but in giving it to Congress it recognized it as a just and necessary law, consistent with the unimpaired obligation of 'contracts.
If the foregoing reasoning be correct, I have proved, and have a right to conclude, that a debtor may be released from the demands of all creditors, who have impleaded him in the tribunal of the State to which he resorts for the benefit of an Insolvent Act.
2. The next provision of the Act of this State is, that the debtor shall be discharged from the demands of those who shall accept a dividend of his estate.
Of the validity of this provision there can be no doubt. The effect of it is no greater than that of a private deed of composition ; and its obligation arises in the same way, from the voluntary consent and agreement of the creditors.
3. The next, and last provision of the Act does not come so clearly within the spirit and range of our principle. It is, that no creditor, who is such when the debtor applies for the benefit of the law, shall implead the debtor, so as to charge his person, in less than twelve months from the time of his release under the Act.
This provision, limited as it is in point of time, is unimportant in itself; an<^ as ^ depends on a question *not necessarily connected with our subject, namely, how far a State may close its tribunals ? I will not increase the necessary length of this discussion, by examining it. Giving the definition and extent of operation to insolvent laws, which I have thus attempted to establish, all the power will remain in the Legislatures of the States, and may be exercised by the Courts of the States, which humanity or necessity requires. Arguments of general expediency, if it should be supposed that any exist, alone and unaided by more cogent reasons, drawn from the terms of the constitution, will be entitled to little weight, in an attempt to subvert what shall appear (if that shall be the result,) to be a plain and obvious construction of the constitution, on the point before us. But without entering into an enumeration of them *299 I will barely say, that it appears to me the limits of expediency, on the subject, are coextensive, and no more, with those of humanity and necessity. Expediency would deny to the State of South Carolina the right to discharge an absconding debtor from Pennsylvania, from the obligation of his contract, when the creditor was not a subject of the State, and was ignorant of its laws, and ignorant, probably, of the fact, that his debtor was within its territory, when he had never entered its tribunals to ask their assistance, nor submitted to their jurisdiction. Expediency would still more emphatically deny this power where the creditor was a resident of London, Paris, or St. Petersburgh. Indeed the whole foundation of expediency, on which the authority of the federal judiciary, in relation to contracts, rests, applies equally to the case before us. But I am anticipating the question of the exclusive right of Congress to pass uniform laws of bankruptcy, which we will hereafter consider. The exposition which we have given of the insolvent laws, which form a part of the Lex Fori, would leave untouched the demands of all creditors who had not sued in the State tribunals, at the time a debtor should be allowed the benefit of the insolvent law, and of course all creditors out of the State.
The next question I will consider is, what is a bankrupt law ?
*1 think a bankrupt law may be defined to be any law for the relief of insolvent debtors. By insolvent debtors, I mean here, and throughout this opinion, those who either from absolute deficiency of funds or temporary embarrassments, are unable to meet their engagements, and shall in consequence be brought within the operation of insolvent or bankrupt laws. It may be supposed that this definition is deficient, inasmuch as one of the most frequent objects of a bankrupt law is a compulsory cession, by the debtor, for the benefit of the creditor, of his estate and effects. This is true in point of fact, but it is only a part of the policy of the particular law, and not essential to the character of a bankrupt law generally, which seems to me to be founded entirely on the idea of relieving the debtor, though one of its best effects is the security which it generally gives to the creditor. It may be objected to this definition, that what we have defined to be an insolvent law also comes within the definition given of a bankrupt law. It certainly does, but yet I conceive there is no inconsistency produced by this fact The converse of the proposition is not true. An insolvent law, as before defined, will not embrace a bankrupt law, as we have just defined it. The terms are in a great measure arbitrary, and there is nothing in the original meaning of the words which would prevent them from being made convertible terms. We have, however, found them in use with distinct, though badly defined significations, and so we must discuss them. But I think it cannot be doubted that Congress, under the power to establish uniform laws of bankruptcy, has the power to enact any other provisions of the bankrupt law of England ; for example, for the relief of debtors, without being under the necessity to enact the other provisions. Whatever provision it enacts must be uniform throughout the United States, and for the relief of the debtor ; but no more is necessary to constitute it a bankrupt law, under the constitution. The general features of a bankrupt law, as we have been accustpmed to contemplate it, are the compulsory *300 ^cession of the property of the bankrupt, for the benefit of all Ms creditors, on the one- hand, and on the other, a compulsory abandonment by all the creditors of their claims on their debtor. But these provisions are not essentially and inseparably incident to a bankrupt law. A bankrupt law is whatever the policy of a competent Legislative authority may make it: different at different times. It is immaterial whether, according to its provisions, the debtor or his creditors are made the actors in bringing it into operation. Nor is it necessarily confined to traders. The persons who are the objects of it, varies like the other provisions of the law, according to the policy which governs the Legislative authority. There is but one fixed idea attached to the term, which is, that it shall be for the relief of the debtor. The most fixed distinction between insolvent and bankrupt laws, as the terms are respectively used in general, is that the release of the debtor, under an insolvent law, is the result of the creditor’s own act, in impleading his debtor, and therefore voluntarily on his own part; but under a bankrut law, it is entirely compulsory, except in the case of the petitioning creditor. But even this last feature I do not conceive to be at all essential to a bankrupt law, except in point of policy.
3. I proceed now to inquire, whether the power of Congress to establish uniform laws of bankruptcy is exclusive or not ?
I suppose I have shown, that insolvent laws, which will discharge the debtor in all cases in which he has been impleaded, will have effect, as a part of the Lex Fori, and by the voluntary submission of the creditor. Such laws are then consistent with the exclusive right of Congress to pass uniform laws of bankruptcy; because their operation depends on the voluntary submission of the creditor, who may as well in this way discharge his debtor, if he chooses, as he may by a release. But here I think the power of the State authorities end. I think the power of Congress to establish uniform laws of bankruptcy is exclusive, and *^en*es to States all power on the subject, except that which shall have its operation as a part of the Lex Fori. On the exclusive power of Congress, I do not desire to add a word to the admirable, and, in my opinion, perfectly conclusive argument of Mr. Justice Washington, in the ccse of Golden v. Price. Then, to apply these results to the case before us. The plaintiff sued the defendant in the Courts of this State, and subjected himself to the Lex Fori, under which the defendant was entitled, as against the plaintiff, to the benefit of the Insolvent Act of this State, upon complying with the provisions of it. I concur with my brother Colcook, that a notice of three months was necessary, under the Act, for the reasons he has assigned; and I give no opinion on the other points in the case, as it is unnecessary to do so.

 4 Stat. 56.

 5 Stat. 78. See 5 Rich,. 293; 2 Strob. 140 ; 10 Rich. 237.

 MeC. 339.

 1 Rich. 192; 1 Strob. 101

 See Carpenter v. Kennedy, 2 Brev. Dig. 157, note.

 1 Brev. Rep. 25.

 3 MeC. 97.

 *It is interesting to observe the analogy in the effects which a cessiobonorum has in most of the codes and laws of the civilized world. By the Julian law of the Romans, the debtor assured the liberty of his person by making an entire cession of all his goods to his creditors; 5 Code Civil of Napoleon, 171. But his future acquisitions were liable ; Wood’s Civil Law, 384; Brown’s Civil Law, 254. 1 Domat’s C. L. b. 4, tit. 5, sec. 1; Cooper’s Just. 348, but see note 642.
In Holland, and England, up to the 4th and 5th Ann, it worked a discharge of the person, but not of the future acquisitions; 1 Atk. 256.
In France, it has the same effect, under Napoleon’s Code, (“La cession judicial-e n’eteint point Paction des creanciers sur les biens quele failli pent acquerir par lasuite; elle n'a d’autre effect que de soustraire le debiteur a la contrainte par corps.”') Code de Commerce, 136, sec. 568. See also, Dictionnaire des Sciences, art. Cession.
In the United States Court it is the same: Sturges v. Crowninshield, 4 Wheaton, 198. And for the English cases, and those of the different States, see Judge Cooper’s note to his Justinian, 622. R.
2 N. & McC. 229.